**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Michael D. Foster, Juliann Foster,

        Plaintiffs,                    **MEMORANDUM OPINION
                                                  AND ORDER**
    v.                                       Civil No. 08-900 ADM/AJB

Daniel J. Smith, Ann M. Smith, Brian
Smith, Carrie Yeary, Midwest Equity
Consultants, Inc., Andrew Schultz, and
Anchor Bank Heritage, N.A.,

        Defendants.

___

Nicholas P. Slade, Esq., Barry & Slade, LLC, Minneapolis, MN, on behalf of Plaintiffs.

T. Christopher Stewart, Esq., and Garth G. Gavenda, Esq., Anastasi & Associates, PA, Minneapolis, MN, on behalf of Defendant Anchor Bank Heritage, N.A.

Jaren L. Johnson, Esq., BenePartum Law Group, PA, Mendota Heights, MN, on behalf of Defendants Daniel J. Smith, Ann M. Smith, Brian Smith, Carrie Yeary, and Midwest Equity Consultants, Inc.

___

**I. INTRODUCTION**

The undersigned United States District Judge heard oral argument on Defendant Anchor Bank Heritage, N.A.'s ("Anchor") Motion for Summary Judgment [Docket No. 17] on February 13, 2009. In their Complaint [Docket No. 1], Plaintiffs Michael D. Foster and Juliann Foster ("the Fosters" or "Plaintiffs") allege eleven counts, including violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f; the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1639; and Minn. Stat. §§ 325N.01-.18, a consumer protection statute governing mortgage foreclosures. For the reasons stated herein, Anchor's Motion is denied.

## II. BACKGROUND[1]

By early 2006, the Fosters received notice that they were facing foreclosure for having fallen behind on their Wells Fargo mortgage payments on their home in Hastings, Minnesota. Id. ¶¶ 3, 13, 14, 16; Hammond Aff. [Docket No. 20] ¶ 9.  U.S. Bank also held a mortgage on the Fosters' home, which was foreclosed on pursuant to a sheriff's sale held on April 13, 2006. Hammond Aff. ¶ 10.  This foreclosure triggered a six-month redemption period required under Minnesota law, which was set to expire on October 13, 2006.  Id.  When the Fosters' home went into foreclosure, their monthly mortgage payments were approximately $800 and they owed an accelerated balance of $115,457.30 in missed monthly installments and late fees.  Id.; Compl. ¶ 14.

Upon learning they were facing foreclosure, the Fosters were referred to Defendant Midwest Equity Consultants ("Midwest").[2]  Compl. ¶ 16.  Midwest retained an appraiser who valued the Fosters' home at $157,000 and informed the Fosters that Midwest had a "program" that would help them "save their home" by finding an investor to refinance the property.  Id. ¶ 17-18.  After being assured they would be able to keep their home and that Midwest would assist them with their credit status, the Fosters agreed to participate in the program and to pay Midwest $12,000.  Id. ¶ 20-22.

Midwest consulted with the Fosters and formulated a plan to provide the Fosters with funding to pay off the foreclosing mortgage held by U.S. Bank before the redemption period

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2] Defendants Daniel J. Smith, Brian Smith, and Carrie Yeary are or were employees or owners of Midwest.  Compl. ¶¶ 7-9, 11.

expired and to pay off additional creditors to "clean up" the property and allow it to be transferred without any prior liens or encumbrances. Hammond Aff. ¶ 13. To carry out this plan, the Fosters entered into a Purchase Agreement dated October 3, 2006, to sell their home to Daniel Smith and Defendant Ann M. Smith (collectively "the Smiths") for $157,000. Id. ¶ 14. The Fosters would continue to live in their home pursuant to a contract for deed that would allow them to repurchase the home fourteen months later in December 2007, at which time Midwest would assist the Fosters in obtaining a new loan with better terms. Id. ¶¶ 14-15, Compl. ¶¶ 27-28, 32. Under the arrangement, the Fosters were required to pay $1,866.42 per month for the duration of the fourteen months and then to obtain a loan of approximately $110,000 to repurchase the home from the Smiths. Id.

To finance their purchase of the Fosters' home, the Smiths obtained a mortgage from Anchor in the amount of $157,000. Hammond Aff. ¶ 16. The loan was disbursed at closing on October 5, 2006, and used to satisfy U.S. Bank's foreclosing mortgage, stop the running of the six-month redemption period, and allow the home to be sold to the Smiths and then reconveyed pursuant to the contract for deed with the Fosters. Id. The Smiths executed and delivered to Anchor the promissory note and the mortgage, which was filed with the registrar of titles and the county recorder on October 19, 2006. Id. ¶¶ 16-17. The Anchor mortgage was originally scheduled to mature on October 5, 2007, but was later extended to mature on February 15, 2008. Id. ¶ 20, Ex. E. at 3. The Anchor mortgage has now matured and is in default. Id. ¶ 21.

The Fosters filed their Complaint on March 31, 2008, alleging that the foreclosure reconveyance arrangement was part of a "deceptive equity-stripping scheme" devised by Midwest and the Smiths. Compl. ¶ 1. Anchor now moves for summary judgment.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

The Fosters have alleged that their foreclosure reconveyance arrangement with the Smiths gave rise to an equitable mortgage and that in carrying out the reconveyance, Midwest, the Smiths, Brian Smith, and Carrie Yeary violated TILA, HOEPA, and the implementing regulations for those statutes, Regulation Z, as well as Minn. Stat. §§ 325N.01-.18. The Fosters claim that these violations entitle them to rescind the transaction between themselves and the Smiths. In its Motion for Summary Judgment, Anchor does not dispute the Fosters' allegations nor does Anchor assert that the Fosters' claims against Midwest, the Smiths, Brian Smith, and Carrie Yeary somehow fail as a matter of law. Accordingly, (1) whether the transaction between the Fosters and the Smiths created an equitable mortgage; (2) whether Midwest, the Smiths, Brian Smith, and Carrie Yeary violated TILA, HOEPA, Regulation Z, and state law; and (3) whether the Fosters are entitled to rescind the transaction between themselves and the Smiths

because of such violations, are all matters that will be left unresolved by the current Motion.

Anchor asserts that there is no dispute that it did not participate in the discussions and transaction between the Fosters and the Smiths and had no knowledge of the alleged equity-stripping scheme. Anchor's Mem. in Supp. of Mot. for Summ. J. [Docket No. 19] at 6-11. Therefore, Anchor argues, "there have been no claims asserted in the Fosters' Complaint that provide them with standing to rescind the mortgage provided by the Smiths to Anchor, nor to [sic] any of the claims asserted by the Fosters against Anchor have any legal merit or support whatsoever." Id. at 2. The Fosters respond that Anchor "mischaracterizes" the nature of this action and "conflates the transaction between Plaintiffs and the Smiths with the transaction between the Smiths and Anchor." Pls.' Resp. to Mot. for Summ. J. [Docket No. 21] at 2. They explain that their claims are directed only at the transaction between themselves and the Smiths. Id. at 4. "[H]owever, because the Smiths could only grant an interest in the . . . home equal to the interest the Smiths held," if the Fosters ultimately prevail in rescinding the transaction with the Smiths, the interest conveyed in the transaction between the Smiths and Anchor will be impacted and Anchor will be left with an unsecured interest in the home. Id. at 11-12.

Both Anchor and the Fosters urge the Court to consider Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139 (D. Minn. 2007), which involved facts and claims substantially similar to those in this case. Like here, the plaintiffs in Jones were homeowners who alleged that they were the victims of an equity-stripping scheme, that the foreclosure reconveyance they agreed to enter into created an equitable mortgage, and that they were entitled to rescind the transaction due to violations of TILA, HOEPA, Regulation Z, and Minn. Stat. §§ 325N.01-.18. See 514 F. Supp. 2d at 1144-46. The bank that financed the foreclosure reconveyance in Jones was included in

5

the action not because the plaintiffs had direct claims against it but merely because it was "an indispensable party with respect to the claims of rescission" asserted against the other defendants. Id. at 1151. Here too, the Fosters clarify that Anchor, as the party that holds the mortgage the Smiths obtained to finance their purchase of the Fosters' home, is a party to this action only because any relief granted to the Fosters on their claims seeking to rescind the transaction between the Fosters and the Smiths will necessarily affect Anchor's interest in the home. See Compl. ¶ 10; Pls.' Resp. to Mot. for Summ. J. at 4. Until the merits of the Fosters' claims seeking rescission of the transaction between themselves and the Smiths is resolved, summary judgment with regard to Anchor is premature.

Anchor contends this case is distinguishable from Jones. In Jones, the court noted that "[t]he right to the remedy of rescission may be conditioned upon repayment to a creditor" and it is within the court's discretion to "allow the debtor a reasonable time to pay the mortgage amount." 514 F. Supp. 2d at 1146 (citations omitted). Citing this language, Anchor argues it "extended a proposal to the Fosters whereby Anchor would agree to provide a mortgage with an interest rate of [f]ive [p]ercent . . . amortized over a thirty year period of time, with a balloon payment or refinancing due within two-four years," which, according to Anchor, "would have essentially lowered the principal and interest payments for the Fosters to approximately [$720] per month." Anchor's Mem. in Supp. of Mot. for Summ. J. at 12. Thus, Anchor claims, it "has demonstrated that it has provided the Fosters with an opportunity to repay the outstanding mortgage amount[] and . . . a reasonable time within which to payoff the mortgage amount." Id. Anchor's argument is not persuasive. While the principle articulated in that language might be relevant in fashioning an appropriate *remedy* for the claims asserted in this case, a determination

6

on the merits of those claims must first be made. Furthermore, determining how to equitably condition the remedy of rescission is a matter for the Court after a determination on the merits of the Fosters' claims; it is not a matter that can be resolved by a unilateral proposal from Anchor before any determination of the merits of the rescission claim.

At oral argument, the parties raised for the first time the issue of whether Anchor is a bona fide purchaser,[3] and if so, whether such status would require that Anchor's interest in the home not be diminished by resolution of the Fosters' rescission claim against the Smiths. See Proulx v. Hirsch Bros., Inc., 279 Minn. 157, 164, 155 N.W.2d 907, 912 (1968) ("Rescission and restoration will not be granted to the prejudice of bona fide purchasers acquiring rights subsequent to the execution of the instrument sought to be cancelled.") In other words, if Anchor is indeed a bona fide purchaser, a determination that the foreclosure reconveyance between the Fosters and the Smiths resulted in an equitable mortgage should not operate to the prejudice of Anchor's interest in the home. Although the parties raised the issue, they have not identified any evidence in the record relevant to the fact question of whether Anchor is a bona fide purchaser. See King Cattle Co. v. Joseph, 158 Minn. 481, 487, 198 N.W. 798, 800 (1924) (holding that whether a party is a bona fide purchaser "depends upon a variety of circumstances and is usually a question for the jury"), *aff'd on reargument*, 199 N.W. 437 (1924). Also, at this time, determining whether Anchor is a bona fide purchaser is premature as such a determination will be necessary only if the Fosters prevail in rescinding the foreclosure reconveyance between themselves and the Smiths.

---

[3] A bona fide purchaser is one who provides valuable consideration without actual, constructive, or implied notice of others' inconsistent outstanding rights. See Miller v. Hennen, 438 N.W.2d 366, 369 (Minn. 1989).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Anchor Bank Heritage, N.A.'s Motion for Summary Judgment [Docket No. 17] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 16, 2009.